UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HAMZAT UMAROV, HAWA UMAROVA, ADAM UMAROV, JUNES UMAROV, and HEDA UMAROVA, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No._____ |
| MICHELE MCPHEE, MCPHEE PRODUCTIONS, INC., ABC NEWS, DMG MEDIA LIMITED, THE DAILY MAIL, HEAVY, INC., PAMELA GELLER, NEWS CORP AUSTRALIA, and NEW YORK DAILY NEWS, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT**

Plaintiffs Hamzat Umarov, Hawa Umarova, Adam Umarov, Junes Umarov, and Heda

Umarova ("The Umarovs" or individually by first name), citizens of the United States and

residents of Massachusetts, bring this action against Michele McPhee ("McPhee") and her

corporation McPhee Productions, Inc. ("McPhee Productions"), ABC News ("ABC"), the Daily

Mail ("Daily Mail") and its parent company dmg media limited ("DMG") [properly lower case],

Heavy, Inc. ("Heavy"), Pamela Geller ("Geller"), News Corp Australia ("News Corp"), and the

New York Daily News ("NY Daily News") for defamation per se, to wit, that Heda is an Islamist

terrorist, has materially supported the Islamic State or other Islamist terrorists, and/or is

suspected by the FBI for various terrorism and immigration-related offenses. Plaintiffs seek

damages for harm to reputation, economic injury, emotional distress, and whatever other relief the Court may order.

## PARTIES

1. Plaintiffs are residents of Massachusetts. Hamzat is the father of Heda, Hawa, and Adam.

2. Defendant Michele McPhee is a resident of Massachusetts residing at 156 Porter St., Apt 237, East Boston, MA 02128, and is President, Treasurer, Secretary, CEO, and Director of McPhee Productions, Inc.

3. Defendant McPhee Productions, Inc., is a Massachusetts corporation with principal office at 156 Porter St., Apt 237, East Boston, MA 02128. McPhee Productions does not appear to have operations independent of McPhee.

4. Defendant ABC News is a news organization with principal office at 47 West 66th St, New York, NY 10023. It publishes online content to Massachusetts consumers and sells advertisements to Massachusetts customers.

5. Defendant dmg media limited is a UK consumer media company with head office at Northcliffe House, 2 Derry Street, London UK W8 5TT, and is parent company to The Daily Mail. DMG purports to create digital and mobile content globally, and reach 28 million people per month.

6. Defendant The Daily Mail is a newspaper registered in England and Wales, and online content provider with head office at Northcliffe House, 2 Derry Street, London UK W8 5TT.

7. Defendant Heavy, Inc. is a news and information website with an office at 330 West 38th Street #302, New York, NY 10018. Heavy purports to reach 23 million people worldwide every month.

8. Defendant Pamela Geller is a pundit, journalist, professional media contributor, and anti-Islam activist with a mailing address, on information and belief, of 1040 1st Avenue, Box 121, New York, NY 10022, through one of her organizations, American Freedom Defense Initiative.

9. Defendant News Corp Australia is an Australian news company that publishes consumer content online worldwide and sells advertisements to customers in Massachusetts, with an office at 2 Holt Street, Surry Hills, Australia, NSW 2010.

10. Defendant NY Daily News is a newspaper and online content publisher with an office at 4 New York Plaza, New York, NY 10004, which publishes content online and sells newspapers in Massachusetts.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332, as the plaintiffs and some defendants are citizens of different states and countries, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue in this District is proper pursuant to 28 U.S.C. § 1391, in that the defendants or their agents, or certain of them, reside or may be found here, a substantial part of the events giving rise to plaintiffs' claims occurred here, and the defendants transact business here.

## FACTS

13. Hamzat Umarov is the father of Heda Umarova, Hawa Umarova, and Adam Umarov.

14. All plaintiffs are citizens of the United States.

15. Hamzat Umarov was born in Chechnya, and the Umarovs have family who reside in Chechnya.

16. In or about March of 2013, the Umarovs purchased round-trip tickets to Chechnya to visit Hamzat's parents and other family from mid-July to mid-August.

17. On April 15, 2013, Dzhokhar Tsarnaev and his brother bombed the Boston Marathon as a terrorist act, causing multiple deaths and numerous injuries.

18. The Umarovs had known the Tsarnaev family in Massachusetts, including Dzhokhar Tsarnaev.

19. None of the Umarovs had anything to do with the bombing or any other terrorist attack.

20. Upon learning of the bombing and discovering the identity of the bombers, the Umarovs contacted the Chelsea Police Department. They met with the Chief of Police, Brian Kyes, to offer any assistance they could with the investigation.

21. Soon afterward, the FBI contacted Hawa and asked to speak with the entire family. The FBI requested their cooperation with the investigation, and the Umarovs agreed.

22. The Umarovs traveled to Chechnya as planned.

23. While in Chechnya, Heda met a man, and with approval of her parents, stayed in Chechnya to pursue a relationship with him.

24. In the fall of 2013, McPhee began coming to the Umarovs' residence and demanding interviews.

25. The Umarovs refused all of her demands on the advice of the FBI.

26. McPhee continued coming to the Umarovs' residence at all hours of day and night, ringing the bell, harassing all persons coming into or out of the building, and shouting through the Umarovs' door to them.

27. McPhee told Hamzat that if he did not give an interview, he would be "sorry," or words to that effect.

28. Hamzat continued to decline an interview.

29. McPhee then traveled to Adam and Junes' school, MCLA, in North Adams, three hours away. After hearing of her behavior toward the rest of their family, the brothers felt it necessary to leave school while she was there.

30. McPhee then wrote an article, which was published by ABC, and heavily cited by Daily Mail, Heavy, and NY Daily News. The article has been attached as Exhibit A, and can be retrieved from http://abcnews.go.com/Blotter/feds-searching-friend-boston-marathon-suspect-concern-chechnya/story?id=22708871 as of February 11, 2016.

31. The article begins with a photograph of Heda and Dzhokhar Tsarnaev, captioned "Investigators are searching for Heda Umarova, pictured here with Boston Marathon bombing suspect Dzhokhar Tsarnaev in an image on a Russian social networking site, after she failed to return from a family trip to Chechnya last year."

32. The article states in part: "U.S. counter-terrorism officials are attempting to track down a female friend of the accused Boston Marathon bomber after she traveled to Chechnya last year and is believed to have since posted 'alarming' jihadi imagery online, officials told ABC News."

33. On information and belief, no federal officials have ever sought Heda, questioned her whereabouts, or expressed any concern whatsoever about her decision to remain in Chechnya.

34. Heda has not posted any jihadi imagery to Russian social networks. The name "Heda Umarova" is common in Russia.

35. Heda is not a "friend" of Dzhokhar Tsarnaev.

36. The article states in part: "Her younger brothers, Adam, 20, and Junes, 18, were already under suspicion by some investigators because of their online support for the Tsarnaev brothers and social media postings that included tweets with Dzhokhar a day before the blasts."

37. On information and belief, neither Adam nor Junes have been under suspicion by any authorities, nor have they ever expressed "support" for the Tsarnaev brothers.

38. The article states in part: "'No one is calling Heda a terrorist but her travel has certainly garnered some attention. People are concerned that a 23-year-old is in Chechnya, a country that she fled from... and now she is deciding to stay on her own,' a ranking law enforcement source involved in the Boston Marathon investigation told ABC News. The source said that her decision to stay in Chechnya also raised eyebrows because, at least until she is married, she didn't seem to have any 'obvious means' of support."

39. On information and belief, it is false that Heda's travel had garnered any attention beyond that of McPhee, or ever "raised eyebrows." It is not even correct that she didn't have any "obvious means" of support insomuch as she was living with family.

40. The article states in part: "Umarova's trip back to the same country from which her parents fled as refugees a decade ago to seek political asylum in the U.S. brought federal agents back to her family's Chelsea home -- the same second-floor apartment that armed agents searched last April during the manhunt for the accused marathon bomber, several law enforcement officials told ABC News."

41. It is false that Heda's trip brought federal agents to the family's home. The Umarovs contacted them of their own volition.

42. The agents who responded to the home at the Umarovs' request were no more heavily armed than normal.

43. The search was not part of the manhunt for the Tsarnaev brothers.

44. On information and belief, Plaintiffs doubt that any law enforcement officials told McPhee anything of the sort.

45. There are numerous other assertions and characterizations in the article which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

46. The article posted by Daily Mail relies heavily on this article, has been attached as Exhibit B, and can be retrieved from http://www.dailymail.co.uk/news/article-2573240/The-hunt-Heda-Feds-search-Boston-bomber-Dzhozkar-Tsarnaevs-friend-23-fails-return-Chechnya-posts-alarming-pictures-jihadists-online.html as of February 11, 2016.

47. The article posted by the Daily Mail contains numerous assertions and characterizations which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

48. The article posted by NY Daily News relies heavily on McPhee's article, has been attached as Exhibit C, and can be retrieved from http://www.nydailynews.com/news/national/feds-seek-friend-dzhokhar-tsarnaev-moved-chechnya-report-article-1.1710650 as of February 11, 2016.

49. The article posted by NY Daily News contains numerous assertions and characterizations which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

50. The article posted by Heavy relies heavily on McPhee's article, has been attached as Exhibit D, and can be retrieved from http://heavy.com/news/2014/03/heda-umarov-dzhokhar-tsarnaev-friend/ as of February 11, 2016.

51. The article posted by Heavy contains numerous assertions and characterizations which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

52. The article posted by News Corp Australia relies heavily on McPhee's article, has been attached as Exhibit E, and can be retrieved from http://www.news.com.au/world/north-america/us-officials-search-for-heda-umarova-friend-of-boston-suspect-dzhokhar-tsarnaev-over-jihad-imagery-from-chechnya-trip/story-fnh81jut-1226846159087 as of February 11, 2016.

53. The article posted by News Corp contains numerous assertions and characterizations which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

54. The article posted by Pamela Geller relies heavily on McPhee's article, via the News Corp article, has been attached as Exhibit F, and can be retrieved from

http://pamelageller.com/2014/03/us-officials-search-heda-umarova-friend-boston-marathon-bomber-dzhokhar-tsarnaev-jihad-imagery.html/ as of February 11, 2016.

55. The article posted by Geller contains numerous assertions and characterizations which suggest that one or more members of the Umarov family are, or are suspected of being, or have supported, or are supporting, or have expressed support for radicalized Islamist terrorism and/or radicalized Islamist terrorists.

56. Each of the above articles specifically names and/or depicts Heda Umarova and states personally-associable details such as the names of family members, the town of the family's residence, and/or references, factual or otherwise, to identifiable events in the lives of the family, such that it is clear about whom the articles were written.

57. Each of the above articles contains false and/or misleading assertions and characterizations which would tend to suggest that Heda or the Umarovs support, sympathize with, materially support, and/or have become radicalized by terrorists.

58. The search terms "Heda Umarova", "Hawa Umarova", "Hamzat Umarov", "Adam Umarov", and "Junes Umarov" all return these articles in or near the front page, often as the top result, on Google.

59. McPhee knew that her statements were false.

60. McPhee is a journalist, and, if she did not know that her statements were false, published them with wanton disregard of the truth or falsity of those statements.

61. All other defendants are journalistic companies and/or publishers and/or media sources, and published or re-published McPhee's story with wanton disregard of the truth or falsity of those statements.

62. Hawa has been unable to find employment in her field ever since these articles were published.

63. Heda is afraid to travel home to the United States since these articles were published.

64. The Umarovs have had significant difficulty, harassment, aggravation, and delay when traveling internationally ever since these articles were published.

65. Hamzat was terminated from his full-time job after these articles were published, and has been unable to find equivalent employment ever since these articles were published.

66. Adam and Junes, as well as all of the Umarovs, are now tainted in the minds of anyone who Googles their names as possible terrorists or terrorist sympathizers or supporters as they begin their career paths.

67. All of the Umarovs have lost friends and associations as a result of these articles.

68. Hawa's boyfriend broke up with her as a result of these articles.

## COUNT I – MCPHEE AND MCPHEE PRODUCTIONS

### (Defamation)

69. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 66.

70. McPhee published a series of assertions and characterizations that she knew were false and/or intentionally misleading which depict the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

71. In the alternative, if she did not know they were false, McPhee and her corporation hold themselves out to be a journalist and a media company, and they published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

72. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

73. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential gainful employment, as a result of McPhee's article.

## COUNT II – ABC NEWS

### (Defamation)

74. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 66.

75. ABC News published McPhee's article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

76. ABC News is a mass media company, and they published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

77. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

78. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a
loss of associations, and loss of potential gainful employment, as a result of the article.

## COUNT III – DAILY MAIL AND DMG

### (Defamation)

79. Plaintiffs reallege and incorporate herein by reference the allegations contained in
Paragraphs 1 through 66.

80. DMG, through its newspaper brand Daily Mail, published an article relying on McPhee's
article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of
terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and
jihadist social media postings. Material support of terrorism is punishable under 18
U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

81. DMG is a mass media company, Daily Mail is a newspaper and online media site, and
they published false statements and defamatory characterizations with wanton disregard
for the truth or falsity thereof.

82. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience
including readers in Massachusetts.

83. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a
loss of associations, and loss of potential gainful employment, as a result of the article.

## COUNT IV – HEAVY

### (Defamation)

84. Plaintiffs reallege and incorporate herein by reference the allegations countained in
Paragraphs 1 through 66.

85. Heavy published an article relying on McPhee's article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

86. Heavy is a mass media company, and they published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

87. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

88. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential gainful employment, as a result of the article.

## COUNT V – NEWS CORP AUSTRALIA

### (Defamation)

89. Plaintiffs reallege and incorporate herein by reference the allegations countained in Paragraphs 1 through 66.

90. News Corp published an article relying on McPhee's article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

91. News Corp is a mass media company, and they published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

92. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

93. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential gainful employment, as a result of the article.

## COUNT VI – GELLER

### (Defamation)

94. Plaintiffs reallege and incorporate herein by reference the allegations countained in Paragraphs 1 through 66.

95. Geller published an article relying on the News Corp article relying on McPhee's article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

96. Geller is a pundit, commentator, anti-Islam activist, and professional media contributor, and she published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

97. Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

98. The Umarovs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential gainful employment, as a result of the article.

## COUNT VII – NEW YORK DAILY NEWS

### (Defamation)

99. Plaintiffs reallege and incorporate herein by reference the allegations countained in Paragraphs 1 through 66.

100.      NY Daily News published an article relying on McPhee's article that depicted the Umarovs as terrorists, terrorist sympathizers, and/or supporters of terrorism, and Heda as a wanted fugitive suspected of terrorism-related activites and jihadist social media postings. Material support of terrorism is punishable under 18 U.S.C. § 2339B by imprisonment for not more than 20 years, or for life.

101.      NY Daily News is a mass media company, and they published false statements and defamatory characterizations with wanton disregard for the truth or falsity thereof.

102.      Defendants knew, foresaw, and intended that the article be seen by a worldwide audience including readers in Massachusetts.

103.      The Umarovs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential gainful employment, as a result of the article.

## PRAYER FOR RELIEF

104.      Plaintiffs demand judgment against Defendants jointly and severally for compensatory damages on Counts I through VII in the amount of $5 million ($5,000,000); for punitive damages in the amount of $100 million ($100,000,000); for pre-judgment and post-judgment interest on all Counts; for reasonable attorney's fees, and for such other and further relief as this Court finds just and equitable.

## REQUEST FOR JURY TRIAL

105.     Plaintiff demands a jury trial.


Respectfully submitted,

PLAINTIFFS,

by and through


Hamzat Umarov, on behalf of Plaintiffs
137 Congress Ave #2
Chelsea, MA 02150
(617) 386-3688
gorec555@hotmail.com


Complaint drafted by


Mark K. McMahon, Esq. BBO# 691873
Law Office of Mark K. McMahon
678 Massachusetts Ave., Ste. 702
Cambridge, MA 02139
P: (617) 661-0716
F: (617) 492-5991
Mark@MarkMcMahonLaw.com
**NOT ATTORNEY OF RECORD**


Dated: February 11, 2016